Robert and Diane **FENNEMAN**,
Plaintiffs,

v.

**TOWN Of GORHAM** and **Gorham School Department**,
Defendants.

Civ. No. 92–29–P–H.

United States District Court,
D. Maine.

Oct. 2, 1992.

---

Richard L. O'Meara, Murray, Plumb & Murray, Portland, Me., for Robert and Diane Fenneman.

Kenneth M. Cole, James N. Katsiaficus, Jensen, Baird, Gardner & Henry, Portland, Me., for Town of Gorham.

Eric R. Herlan, Drummond, Woodsum, Plimpton & MacMahon, Portland, Me., for Gorham School Dept.

## MEMORANDUM OF DECISION

HORNBY, District Judge.

This is an action for attorney fees and costs under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400–1485. The plaintiffs seek fees and costs for a Pupil Evaluation Team meeting and an administrative due process hearing. All parties have moved for summary judgment. I hold that no fees and costs are authorized for services in connection with the Pupil Evaluation Team meeting, but that the

plaintiffs are entitled to recover as prevailing parties at the administrative due process hearing.

### Facts

The plaintiffs, Robert and Diane Fenneman, are the parents of Gary Fenneman, a sixteen-year old student who has been identified as disabled under the Individuals with Disabilities Education Act ("IDEA"). Gary attended Gorham public schools for two years before this lawsuit. On May 31, 1991, Gorham School Department ("Gorham") held a Pupil Evaluation Team ("PET") meeting to prepare an Individualized Education Plan ("IEP") for Gary's 1991–1992 school year. The Fennemans were present at that meeting. However, the Fennemans were dissatisfied with the resulting IEP and asked Gorham to convene another PET meeting.

Following the May meeting, the Fennemans retained a special education expert to review the proposed IEP and suggest modifications in anticipation of the next PET meeting. The Fennemans also hired a lawyer to assist in the PET process, and, if necessary, the administrative due process hearing.

The next PET meeting was held on September 6, 1991. The Fennemans attended the meeting, along with their expert and lawyer. The PET members reached consensus on several modifications to the proposed IEP, many of which were suggested by the Fennemans' expert. As a result of the meeting, Gorham issued a revised IEP. The Fennemans, however, continued to be dissatisfied with the IEP, and proceeded unilaterally to place Gary in a private residential school program for the following school year.[1] On September 10, 1991, they requested an administrative due process hearing pursuant to 20 U.S.C. § 1415(b)(2).

The administrative due process hearing was held in October and November, 1991.

The Fennemans continued to be represented by their lawyer; they also retained two experts to present testimony at the hearing. The Fennemans presented two issues for decision by the hearing officer: (1) Is the IEP developed by the school appropriate to meet Gary's special education and related needs? (2) Does Gary require residential placement to meet his special education and related needs? The hearing officer ordered relief as follows:

I find the IEP proposed for GF for the 1991–92 school year, for the most part, to be responsive to his identified needs and appropriate to meet those needs. I order the school to increase services, and concomitant goals and objectives, in the IEP to include an extended school day which adds a study skills component 5 times a week, and a guided extracurricular component at least 1 time a week. I do[ ] not find that GF's needs are so severe that he requires a 24 hour residential setting in order to meet his special education and related needs.

The hearing officer denied the Fennemans' request to place Gary at the residential Riverview School.

The Fennemans did not appeal the ruling to federal district court. They did request that Gorham reimburse them for part of the attorney fees and costs they had incurred since June, 1991. Gorham denied the Fennemans' request. The Fennemans then brought this action pursuant to 20 U.S.C. § 1415(e).

### PET Meeting

■ The plaintiffs seek a fee award for the work of their lawyer and expert in preparing for and attending the September 6, 1991, PET meeting. The issue is whether the IDEA authorizes recovery of attorney fees and costs arising from attorney and expert participation in PET meetings.[2]

---

**1.** Apparently, the Fennemans still have not enrolled Gary in the Gorham school system.

**2.** The plaintiffs also characterize the September PET as a pre-hearing settlement conference, and refer to cases that have interpreted the IDEA to allow awards for settlement activities. In fact, no settlement offer was made or discussed at the September PET meeting. The plaintiffs had

not yet even filed for an administrative hearing. Thus, the First Circuit's catalyst doctrine is unavailable to plaintiffs. *See Langton v. Johnston,* 928 F.2d 1206, 1225 (1st Cir.1991) (critical inquiry is whether the suit prompted defendants' action to meet plaintiffs' claim; if defendants acted other than in response to plaintiffs' suit, the catalyst theory does not apply).

The operative language of the fee provision states: *"In any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees...."* 20 U.S.C. § 1415(e)(4)(B) (emphasis added). Although the meaning of "proceeding" could, in the abstract, include PET meetings, the First Circuit has pointed out that "the meaning of 'proceedings' depends upon its statutory context." *Isaac v. Harvard Univ.*, 769 F.2d 817, 821 (1985). Subsection (e) refers only to the administrative due process hearing and the civil action in federal district court. *See Michael F. v. Cambridge Sch. Dep't*, 1987 WL 7752, at * 3-4, 1987 U.S.Dist. LEXIS 1795, at * 5-9 (D.Mass.1987). It neither mentions nor cross references the provisions calling for the development of an IEP. Furthermore, the attorney fees subsection is located in the section setting forth procedural safeguards, 20 U.S.C. § 1415, whereas the IEP subsection is located in the section describing application of the Act, 20 U.S.C. § 1414. Based upon the plain language of the IDEA, I conclude that it does not authorize the recovery of attorney fees or costs arising from participation in PET meetings.[3]

The plaintiffs rely on *Webb v. County Bd. of Educ.*, 471 U.S. 234, 243, 105 S.Ct. 1923, 1928, 85 L.Ed.2d 233 (1985), to argue that fees ought to be recoverable for discrete activities undertaken before the hearing if they are reasonably "performed 'on the litigation.'" They assert that their lawyer's and expert's preparation and attendance at the September 6, 1991, PET meeting was an important stage in the investigation of facts, the formation of a case theory and strategy, the shaping and narrowing of issues, and the gathering and development of evidence for use at the administrative hearing. But just as *Webb* easily separated pre-litigation administrative work from work "on the litigation," I have no difficulty separating PET meetings from administrative hearings under the IDEA. PET meetings are specifically designed to be informal meetings where parents, teachers and administrators sit down to work out an IEP by consensus if possible.[4] Treating them as part of the administrative hearing/litigation process will only encourage adversarial conduct, a result out

---

**3.** A review of the congressional debate over the attorney fees amendment reinforces this plain language interpretation of the statute. The remarks of Congressman Williams, a sponsor of the amendment, to Congressman Bartlett, an opponent of the bill, are directly on point. Although the colloquy concerned the 1985 version of the amendment, the particular section they were referring to read substantially the same as the current version of 20 U.S.C. § 1415(e)(4)(B).

> MR. BARTLETT: Could you clarify the meaning of the terms "action" and "proceeding?"
> MR. WILLIAMS: The term "action" is intended to include a civil action filed in a State or Federal court. The term "proceeding" is limited to the due process hearing that parents are required to exhaust under 615(b)(2) and the State appeal under section 615(c). The term "proceeding" is not intended to include *meetings held to develop individualized education programs or meetings to make decisions concerning such matters as the identification, evaluation, or placement of handicapped children.*

131 Cong.Rec. H9964 (daily ed. Nov. 12, 1985). The remarks of Mr. Bartlett and another congressman, again in response to Mr. Williams, indicate that this same understanding of "proceeding" guided discussion of the 1986 version of the amendment.

> MR. BARTLETT: For the first time, we have authorized the awarding of fees at the *due process hearing system level* in disputes which do not go on to court on a substantive issue.
> * * * * * *
> MR. JEFFORDS: The critical issue in attempting to resolve the differences between H.R. 1523 and S. 415, was not whether attorneys' fees for court cases in which the parents prevail should be compensated, but whether such fees should be paid for work done at *the administrative hearing level.*

132 Cong.Rec. H4841 (daily ed. July 24, 1986) (emphasis added).

**4.** See, for instance, Maine Dep't of Educ.Reg. ch. 101, § 8.9:

> P.E.T. decisions shall be made by consensus of the members present. If the P.E.T. is unable to reach consensus regarding a particular issue, members of the P.E.T. may include dissenting or minority opinions with the minutes; the administrator may reconvene the P.E.T. at a later time; or the team may use whatever method is acceptable to those present in order to reach a decision. If the P.E.T. is deadlocked and unable to agree on a method to make a decision; the administrator shall make the determination subject to the parent or adult student's right to a Due Process Hearing.

of keeping with their purpose. Accordingly, no fees or costs can be recovered in connection with the PET meeting.

### Prevailing Parties

Although the issue has not yet been addressed by the First Circuit, the parties agree that attorney fees and costs are available under the IDEA to parents who are a "prevailing party" at an administrative due process hearing. *See West Virginia Univ. Hosps., Inc., v. Casey*, 499 U.S. ——, 111 S.Ct. 1138, 1143 n. 5, 113 L.Ed.2d 68, 78 n. 5 (1991); *Aranow v. District of Columbia*, 780 F.Supp. 46 (D.D.C.1992).

■■■ The legal standard for determining "prevailing party" status in an attorney fee action under the IDEA is the same as that controlling an attorney fee action following a § 1988 claim. *See Angela L. v. Pasadena Indep. Sch. Dist.*, 918 F.2d 1188, 1193 (5th Cir.1990) (citing the legislative history of the IDEA). The standard is set forth in a recent First Circuit opinion:

> The "prevailing party" criteria endorsed in *Texas Teachers* inquire whether the plaintiff (i) obtained relief on a *significant* claim in litigation, (ii) effecting a *material* alteration in the parties' legal relationship, (iii) that is not merely technical or *de minimis* in nature. *See Texas Teachers*, 489 U.S. at 791–93 [109 S.Ct. at 1492–93] (emphasis added).

*Domegan v. Ponte*, 972 F.2d 401, 414 (1st Cir.1992). On the undisputed facts, the plaintiffs have satisfied all three criteria, and thus were prevailing parties at the administrative hearing.

First, the plaintiffs obtained relief on a significant claim in litigation. Their successful claim that the IEP developed by Gorham was inadequate was clearly significant.[5] It was one of the two issues addressed at the administrative hearing. Although they did not achieve their ultimate goal of having the IEP declared wholly inadequate, they did succeed in obtaining an increase in services, goals and objectives. Thus, the plaintiffs did obtain "some" relief on a significant claim. *See Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791–92, 109 S.Ct. 1486, 1492–93, 103 L.Ed.2d 866 (1989) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978)). *See also Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).

The defendants correctly point out that underlying this first criterion is the requirement that the benefits received be those the plaintiffs "sought in bringing suit." 489 U.S. at 792, 109 S.Ct. at 1493. On this score, they assert that the plaintiffs did not request instruction in study skills, referred to extracurricular activities in the context of peer group activities, and concluded that Gorham was not equipped to provide an appropriate program even if the IEP was expanded as plaintiffs requested.[6]

But it is clear that the plaintiffs did seek the benefits they received at the administrative hearing. The hearing officer ordered the relief in response to what she characterized as the parents' "reasoned argument for the inclusion of an extended day to provide a guided study period and guided assistance for participation in extracurricular activities to further address GF's self-esteem problems." This request corresponds almost exactly to what she then ordered. Furthermore, the hearing officer's preliminary statement referred to the plaintiffs' contention that Gary requires "an appropriate extended day academic program...." Finally, notwithstanding

---

5. The defendants do not argue that the claim concerning the adequacy of the IEP was insignificant. Rather, they argue that the *relief* granted on that claim was insignificant. This argument goes to the third criterion of the standard, and I will address it in that discussion.

The defendants do, however, argue that the claim "was crafted so broadly as to give the appearance of victory no matter what the hearing officer ordered." To the extent this argument is relevant, it is without merit. The claim,

as stated in the form of an issue by the hearing officer, simply reflects the standard for reviewing IEPs set forth in *Board of Educ. v. Rowley*, 458 U.S. 176, 206–07, 102 S.Ct. 3034, 3050–51, 73 L.Ed.2d 690 (1982).

6. The affidavit of the Director of Special Education in the Gorham School Department is not helpful. He could not recollect whether the plaintiffs testified in support of the additions to Gary's IEP.

the defendants' characterization, the plaintiffs' final brief to the hearing officer plainly calls for "an extended day program" and a "curriculum designed to deal with issues related to his learning and physical disabilities." The fact that the plaintiffs also sought more and other relief does not alter the conclusion that they did receive some of what they sought.

Second, the plaintiffs achieved a material[7] alteration in the parties' legal relationship. They obtained a valid order they can actually enforce, enabling them to obtain educational services that were previously unavailable to their child.[8] Although they ultimately chose to keep Gary in a private residential program specifically rejected by the hearing officer, the benefits won at the administrative hearing are available to Gary should he in fact return to the Gorham school system. Thus, the decision of the administrative officer is neither moot, nor incapable of being implemented.

Third, the plaintiffs obtained relief that was neither "technical" nor "*de minimis.*" Their success was obviously small in relation to what they had asked for (and this factor affects the amount of the fee award), but the quality of the relief obtained was significant. *See Domegan,* 972 F.2d 401, at 413 n. 19. Quality of relief is measured by examining the existing relationship that gave rise to the "established wrongdoing" or "unconstitutional action," *Domegan,* 972 F.2d 401, at 413 n. 19, 414, (emphasis omitted), and determining whether the relief materially altered that relationship "in a manner which Congress sought to promote in the fee statute." *Id.* at 416 (emphasis omitted).

The hearing officer's decision speaks directly to the point. The hearing officer ordered an increase in "services, and concomitant goals and objectives." While rejecting the plaintiffs' argument that Gary had regressed while in the Gorham School Department, the hearing officer nevertheless concluded: "Conversely, the school could not argue that he made gains. IEP's of previous years do not demonstrate mastery of IEP goals and objectives. While teachers anecdotal comments indicate that some growth was observed, the parents are justified in their feelings of frustration regarding their son's progress." The plaintiffs' "reasoned argument" caused the hearing officer to change the IEP in order to provide Gary with an appropriate public education. Thus, the relief altered the parties' relationship in exactly the manner contemplated in the IDEA.

The defendants argue that the relief was minor because the plaintiffs lost their request for a residential placement and because the hearing officer concluded that the IEP offered by Gorham was "for the most part ... responsive to [Gary's] identified needs and appropriate to meet those needs." They catalog all the elements in the IEP found to be appropriate, and then conduct a quantitative analysis to show how the relief granted is "minuscule" in comparison. But quantitative comparisons are not helpful. As the First Circuit explained:

> *Texas Teachers* and its precursors are not prologue to the quantitative "prevailing party" test advocated by appellants. Instead, differences in the degree of success achieved are reflected in the *amount* awarded; whereas differences

---

7. Material means an actual, as opposed to significant, alteration. *See Domegan,* 972 F.2d 401, at 406–09, slip op. at 17–22. As the First Circuit explained in *Domegan,* whether a material alteration has occurred is determined by reference to *Hewitt v. Helms,* 482 U.S. 755, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987), and *Rhodes v. Stewart,* 488 U.S. 1, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988). *Domegan,* 972 F.2d 401, at 406. slip op. at 17. In *Hewitt,* the plaintiff prevailed on an interlocutory ruling which, in the face of a final judgment against the plaintiff, could not be used to change the behavior of the defendants towards the plaintiff. In *Rhodes,* "[t]he case was

moot before judgment issued, and the judgment therefore afforded the plaintiffs no relief whatsoever." *Id.* 488 U.S. at 4, 109 S.Ct. at 203. In neither of those cases was there, nor could there be, a material alteration in the legal relationship between the parties. That is not the case here.

8. Following the due process hearing, Gorham failed to convene a PET meeting to incorporate the ordered changes until the plaintiffs filed a formal complaint with the Maine Commissioner of Education and requested an investigation of Gorham's noncompliance.

in kind, as suggested by the Court's articulation of the residual *de minimis* success standard ("significance," "materiality"), require qualitative assessments pertaining principally to the claimant's eligibility for a fee award.

*Domegan,* 972 F.2d at 414.

The relief ordered here was necessary to ensure that the IEP delivered an appropriate public education. In addition to study skills and guided extracurricular components, the hearing officer ordered a concomitant increase in goals and objectives. This directive reflects the broader qualitative significance of the specific items ordered.

The plaintiffs are therefore entitled to a fee award for prevailing at the administrative hearing.

### Amount

■ The district court has great discretion in determining the size of a fee award granted to a prevailing party. The critical factor guiding the court's discretion is the "degree of success obtained." *Hensley,* 461 U.S. at 436, 103 S.Ct. at 1941. However, there is no precise formula for making the determination. In cases such as this, where the plaintiffs' claims for relief involve a common core of facts and the claims are closely interrelated, the court may simply reduce the overall award to "account for the limited success." *Id.* at 437, 103 S.Ct. at 1941.

The plaintiffs maintain that they prevailed on their claim regarding the inappropriateness of the IEP. They claim that this was one of two equally important issues addressed at the hearing. Accordingly, the plaintiffs assert that only a 50% reduction in the lodestar is appropriate for costs incurred at the administrative hearing. The plaintiffs argue that all the attorney fees incurred in bringing the enforcement action in district court should be recoverable.

The defendants argue that the plaintiffs' fee request is unreasonable because the 50% figure has no relationship to the degree of success obtained at the hearing. The defendants point out that the plaintiffs obtained only a small portion of the relief requested on one claim. The defendants quantify their argument in two ways. First, the defendants calculate that the hearing officer's order increased the length of Gary's school week from 33 to 39 hours per week, which would call for an 82% reduction of the 50% figure. Second, the defendants calculate that the plaintiffs obtained only a 6–hour increase in the length of the school week when they were requesting a 135–hour increase; this would warrant a 96% reduction in the 50% figure. The defendants maintain that the latter calculation most accurately reflects the plaintiffs' degree of success.

Clearly, both parties' requests are excessive. I find that the plaintiffs' claim concerning private residential placement was the predominant reason they sought an administrative hearing. Rather than representing equal importance, the claim for residential placement accounted for 60% of the plaintiffs' efforts at the hearing; the claim seeking a declaration that the IEP was inadequate accounted for 40% of the plaintiffs efforts at the hearing. However, I find that the relief granted the plaintiffs on the IEP claim represents 50% of the relief they were seeking on that claim. Thus, the plaintiffs are entitled to recover 20% of the fees and costs expended at the administrative hearing.

At the district court level, I find that the claims to recover for services rendered at both the PET meeting and the hearing represent equivalent significance. Since the plaintiffs prevailed on one of their claims, they are entitled to recover 50% of the fees and costs incurred in bringing the district court action.

Accordingly, the court grants relief as follows. No recovery is authorized for either attorney or expert services performed in preparation for and attendance at the September 6, 1991, PET meeting.[9] Since no undue delay is attributable to the defendants, attorney fees will be calculated at the amount actually billed for the applica-

---

**9.** Accordingly, only 27 hours of Ms. Palozzi's time is recoverable.

ble time periods.[10] Finally, in order to reflect more accurately the modest degree of success obtained on one claim, the lodestar for fees and costs incurred at the administrative hearing is reduced by 80%. The lodestar for fees and costs incurred at the district court level is reduced by 50%. The appropriate calculations are set forth in the attached addendum. Judgment shall be entered in the plaintiffs' favor in the amount of $5,119.27.

SO ORDERED.

## ADDENDUM

### I.   HEARING LEVEL

Attorney Fees

| | |
|---|---|
| Hearing Lodestar: 64.3 hours × $105/hour | $ 6,751.50 |

Costs Incurred

| | |
|---|---|
| Costs Advanced by Murray, Plumb, and Murray | 163.14* |

Expert Witness Fees and Expenses

| | |
|---|---|
| Ann Palozzi, M.Ed. (27.0 hours × $25/hour) | 675.00 |
| Lola Bogyo, Ph.D. (16.0 hours × $75/hour) | 1,200.00 |
| Dr. Bogyo's travel expenses for hearing | 14.60 |
| Total for Hearing Level | $ 8,804.24 |
| Reduction (80%) | − 7,043.39 |
| **Recoverable Award for Hearing Level** | **$ 1,760.85** |

### II.   DISTRICT COURT ACTION

Attorney Fees

| | |
|---|---|
| Fee Action Lodestar: 52.5 hours × $120/hour | $ 6,300.00 |

Costs Incurred

| | |
|---|---|
| Costs Advanced by Murray, Plumb, and Murray | 416.83 |
| Total for District Court Level | $ 6,716.83 |
| Reduction (50%) | − 3,358.41 |
| **Recoverable Award for Hearing Level** | **$ 3,358.42** |
| **TOTAL AWARD** | **$ 5,119.27** |

---

* The $172.14 figure sought by the plaintiffs has been reduced by $9 to preclude recovery for certain costs related to the PET meeting.

10. The plaintiffs' counsel's hourly fees are thus calculated at $105 for work performed in 1991, and $120 for work performed in 1992. I find both of these figures to be reasonable based upon community standards at the time.