Chad L. v. Manchester School District CV-94-498-M   07/20/95
UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Chad L., By and Through His Next
Friend and Parent, Karen Paquette,
      Plaintiff,

      v.                                        Civil No. 94-498-M

City of Manchester,
New Hampshire, School District,
      Defendant.


O R D E R


      Plaintiff Chad L., through his mother Karen Paquette (hereinafter referred to as plaintiff), brings this action against the City of Manchester School District ("District") to obtain attorney's fees pursuant to 20 U.S.C. § 1415(e)(4). Plaintiff claims to be entitled to attorney's fees because she was the prevailing party in administrative due process proceedings brought under the Individuals with Disabilities Education Act ("IDEA") 20 U.S.C. § 1401 et seq. The District objects, and both parties have moved for summary judgment.


**STANDARD OF REVIEW**

      Summary judgment is proper "if pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact "is one `that might affect the outcome of the suit under the governing law.'" United States v. One Parcel of Real Property with Bldgs., 960 F.2d 200, 104 (1st Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for the trial. Anderson, 477 U.S. at 256. The party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial, demonstrating "some factual disagreement sufficient to deflect brevis disposition." Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991), cert. denied, 504 U.S. 985 (1992). This burden is discharged only if the cited disagreement relates to a genuine issue of material fact. Wynne v. Tufts University School of Medicine, 976 F.2d 791, 794 (1st Cir. 1992). The facts in this case are not in dispute, but the conclusions to be drawn from those facts are.

2

## DISCUSSION

### A.    Attorney's Fees

Attorney's fees are available under the IDEA to the parents of a child deemed to be a "prevailing party" at an administrative due process hearing.  Fenneman v. Town of Gorham, 802 F.Supp. 542, 546 (D.Me. 1992); citing West Virginia Univ. Hosps., Inc. v. Casey, 499 U.S. 83, 91 n.5 (1991); see also Barlow-Gresham Union High School Dist. No. 2 v. Mitchell, 940 F.2d 1280, 1284 (9th Cir. 1991) ("The clear language of section 1415(e)(4)(B) contemplates an award of attorney's fees at the administrative level.").  The applicable statute reads as follows:

> In any action or proceedings brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a child or youth with a disability who is the prevailing party.

20 U.S.C. § 1415(e)(4)(B).

"The term `prevailing party' connotes the same general meaning under § 1415(e)(4)(B) and 42 U.S.C. § 1988, and cases interpreting both sections apply the same principles to determine a plaintiff's entitlement to attorney's fees."  Combs v. School Bd. of Rockingham County, 15 F.3d 357, 360 (4th Cir. 1994).  In

3

<u>Farrar v. Hobby</u>, __ U.S. __, __, 113 S.Ct. 566, 573 (1992), the Supreme Court described a "prevailing party" as follows:

> [A] plaintiff "prevails" when actual relief
> on the merits of his claim materially alters
> the legal relationship between the parties by
> modifying the defendant's behavior in a way
> that directly benefits the plaintiff.

Additionally, the court observed that a plaintiff need not "obtain an enforceable judgment against the defendant from whom fees are sought" to legitimately claim prevailing party status, as "relief through a consent decree or settlement" will suffice. <u>Id.</u>; <u>see</u> <u>also</u> <u>Shelly C. v. Venus Indep. Sch. Dist.</u>, 878 F.2d 862, 864 (5th Cir. 1989) (attorney's fees may be awarded under the IDEA when the case is settled prior to the completion of the due process hearing).

### B.   Analysis

Chad L. is an eleven year old boy who lives within the City of Manchester School District.  The District has coded Chad as "seriously emotionally disturbed," and is obligated under the IDEA to provide him with special educational services.  In 1993 the District formulated an Individualized Education Plan ("IEP") for Chad and enrolled him, as a special education student, at the

4

Webster School ("Webster") in Manchester. A Special Education Team (the "Team"), consisting of Chad's teachers and school administrators, monitored Chad's progress and status.

Beginning in the fall of 1993, plaintiff noticed that Chad was having "a lot of problems" at Webster. It appears that she first voiced her concern about those problems on November 16, 1993, during a telephone conversation with Chad's teacher, Ms. Gross. Plaintiff informed Ms. Gross that she was "uncomfortable" with Chad's placement at Webster and asked about having him placed in the Easter Seals program at the Jolicoeur School. Plaintiff's Affidavit. Chad's teacher, while familiar with the Jolicoeur School, thought a better option for Chad would be to provide him with a one-on-one tutor at Webster rather than change schools.

Three days after plaintiff's telephone conversation with Ms. Gross, a Team meeting was held. The record shows that the District responded to plaintiff's legitimate educational concerns by offering the one-on-one tutor at Webster for thirty hours per week. The District's proposal responded not only to plaintiff's expressed concerns, but also took into consideration the fact

5

that Chad was being treated with new medication that might take fourteen days to seven weeks to stabilize.  Plaintiff accepted the District's offer and signed a Written Prior Notice form at that meeting to confirm her agreement.

Five days later, on November 24, 1993, plaintiff revoked her earlier approval of the tutor, because she had doubts about the proposed tutor's qualifications.  The Team met again, on December 2, 1993, at plaintiff's request, to discuss the tutor's qualifications.  Finally satisfied with the tutor's qualifications, plaintiff signed another Written Prior Notice form, once again agreeing to the District's proposal.

As agreed, the District provided Chad with a personal tutor at Webster beginning in early December 1993.  Despite the fact that plaintiff agreed to the tutor, she asserts that she remained dissatisfied with Chad's placement at Webster, and, although she made "numerous requests for meetings" during December 1993 and January 1994 to further discuss changing Chad's school placement and IEP, the District denied each such request.

While plaintiff did request that a Team meeting be held on December 17, 1993, the purpose of that meeting was not to discuss school placement or IEP changes. Instead, plaintiff requested a meeting for the purpose of discussing Chad's "triennial review." The District responded immediately by scheduling the meeting, at which the District proposed Chad continue his classification at "Level 06 - seriously emotionally disturbed." On December 21, 1993, plaintiff signed a Written Prior Notice form, agreeing to the District's proposal. The record reveals no other requests for meetings by plaintiff in December of 1993 to which the District did not accede.

In early January, 1994, plaintiff requested that another meeting be scheduled for January 17, 1994, at 11:00 a.m., this time to discuss Chad's IEP. Ms. Gross, acting on behalf of the District, responded right away, informing plaintiff that school would not be in session that day and that meetings during the school day were difficult to arrange. Quite understandably, teachers are obligated to teach during the school day and are typically burdened with many other important responsibilities as well. Their schedules are not easily modified on short parental notice without disruption and inconvenience to equally worthy

7

recipients of their attention.  Ms. Gross stated that she could conveniently meet either before school, at 8:10 a.m., or after school at 2:00 p.m.  Ms. Gross also gave plaintiff her phone number, inviting her to call if she had any questions.  There is no evidence that plaintiff responded to  Ms. Gross's invitation to call.

On January 25, 1994, Ms. Gross took the initiative and wrote to plaintiff, asking if there was "[a]ny word as to when we can schedule a meeting?  You had requested an IEP meeting several weeks ago."  Plaintiff responded on February 8, 1994, stating that she wanted her husband to attend the meeting and, as he was working "new hours," she would have to get back to the District regarding scheduling.  On February 16, 1994, plaintiff wrote to Ms. Gross, asking why meetings were being scheduled which she did not remember scheduling and adding that, had she made such requests, she was <u>withdrawing</u> them until further notice.

Plaintiff never requested another meeting with the District relative to Chad's IEP or school placement.  Instead, she retained legal counsel and initiated formal administrative due process proceedings before the New Hampshire Department of

8

Education, seeking to compel the District to move Chad from Webster to the Jolicoeur School and revise his IEP. A prehearing conference before an administrative hearings officer was scheduled for April 15, 1994.

Upon receiving notice of the formal due process proceedings from the Department of Education, the District contacted plaintiff and reiterated its desire to convene a Team meeting regarding Chad's IEP and school placement. At the District's initiative, the Team did meet again, on April 12, 1994, and, after discussion, agreed that Chad's needs could be met with a modified IEP and school placement change. Accordingly, the District offered to change Chad's placement to the Jolicoeur School, as plaintiff desired, starting in May and continuing through June 1994. Rather than accept, plaintiff took the District's offer under advisement. In the absence of an agreement, the parties were required to proceed to the preliminary due process hearing on April 15, 1994. The hearings officer recognized that:

> The team has convened and offered a detailed
> plan and a change of placement which is being
> considered by Chad's parents. If the parent
> refuses the offer, the matter will have to go
> forward to a (Due Process) hearing. The

9

> District hopes to implement the plan
> beginning May 3, 1994, so that it would
> appear that the parent will have to make a
> decision as to whether or not to agree to the
> proposal prior to that time.

Prehearing Order.

On May 5, 1994, plaintiff accepted the District's offer and signed a Written Prior Notice form to that effect. However, plaintiff also informed the District that she would still pursue a due process hearing as she wanted guarantees that Chad would be placed at the Jolicoeur School through December 1994 and, further, that the District would modify Chad's IEP to include an individualized behavioral modification plan, among other things. The District convened yet another Team meeting on May 25, 1994, to consider plaintiff's additional requests.

At that meeting the parties agreed to the following: 1) The District offered and plaintiff accepted placement of Chad at Jolicoeur School for 30 hours per week from May 3 through June 7; 2) The District offered and plaintiff accepted placement of Chad at Jolicoeur School for 30 hours a week from July 5, 1994, through August 12, 1994; 3) The District offered and plaintiff accepted placement of Chad at Jolicoeur School for 30 hours a week from September 1, 1994, through June 20, 1995; 4) The

10

District accepted responsibility for formulation of an individual behavioral modification plan for Chad by the end of the 1993-94 school year and for full implementation of that plan by the beginning of the 1994-95 school year. At the due process hearing two days later, the hearings officer dismissed the action without prejudice, as all the issues raised at the prehearing conference were resolved.

Based on this record, plaintiff's assertions that the District refused her requests to meet, and that due process proceedings were prompted by that refusal, are simply not credible. If anything, this record shows that the District went the extra mile in an effort to schedule the requested Team meetings, to be responsive and responsible, and to deal sympathetically with a concerned parent. The District responded in a timely fashion to the four (4) Team meeting requests plaintiff made between November 1993 and January 1994, and it convened all but one meeting at the precise time and date plaintiff requested despite the inherent difficulty of doing so. The District's failure to immediately convene the final Team meeting requested by plaintiff stemmed from the fact that school was out on the date plaintiff requested, and plaintiff

11

subsequently withdrew her request. The District's willingness to meet was apparent. It was the plaintiff's willingness to meet that is questionable, for it was she who withdrew the request for a Team meeting to discuss a placement change and initiated formal due process proceedings without giving the District a fair opportunity to consider her views and to decide, in light of them, what education was most appropriate for Chad.

By resorting to the more formal mechanism of a due process hearing procedure, without having a reasonable basis to believe the District was unwilling to meet, or that it was so opposed to her placement requests that meeting would be futile, and without affording the District an opportunity to even consider her requests, plaintiff undermined the value and effectiveness of the informal Team process. In Combs v. School Bd. of Rockingham County, supra, the Court of Appeals for the Fourth Circuit considered a similar situation in which an IDEA plaintiff proceeded immediately to formal due process proceedings without giving the school district a fair opportunity to consider his requests. Holding that the plaintiff was not a "prevailing party" in that case, the court wrote:

12

> [T]he school district should have been given notice and the opportunity to rectify the situation before [plaintiff] brought an administrative action and subsequent lawsuit. While [plaintiff] is free to resort to administrative and judicial action, he cannot expect to recover fees and costs when his efforts contributed nothing to the final resolution of a problem that could have been achieved without resort to administrative or legal process.
>
> Under these circumstances, it would be inappropriate for [plaintiff] to recover attorney's fees. Allowing such an award would encourage potential litigants and their attorneys to pursue legal claims prior to attempting a simpler resolution and would discourage the school from taking any action whatsoever, particularly any favorable change in a child's IEP, once an administrative proceeding or lawsuit was underway for fear that any action on its part would give rise to a claim by the plaintiff that he prevailed and that attorney's fees are in order. We are not prepared to disorder the careful construct of the IDEA in this manner.

Combs, 15 F.3d at 364.

Those same considerations apply here. The informal Team process properly encourages parents and school districts to work together in the best interest of the child. While, as plaintiff's counsel stressed at oral argument, she may not have been legally required to refrain from immediate invocation of formal administrative or judicial proceedings under the IDEA, nevertheless, the Team process fully deserves a good faith effort

13

by all interested parties, both as a matter of reasonableness and sound public policy.

All relevant circumstances are properly considered in determining whether, in the court's discretion, a fee award should be made under Section 1415(e)(4)(B). Given the circumstances presented here, it is difficult to discern how plaintiff can legitimately lay claim to the title "prevailing party." Before one can "prevail," some form of contest, dispute or disagreement must exist. A parent's desire for a different school placement, or any other relief for that matter, which is not made known to the school district in a manner that allows for discussion, consideration, and decision, is not the stuff of which "disputes" or "disagreements" are made. This is a situation in which the parent invoked formal dispute resolution mechanisms before any real dispute existed. Perhaps plaintiff anticipated a dispute, or, perhaps that course was followed in order to shore up a later claim to attorney's fees under the IDEA. As to the former possibility, the anticipated dispute never developed, and none could have been reasonably anticipated by the parent on this record. As to the latter possibility, sound discretion obviously militates against awarding fees where

14

timely, nonadversarial, productive, and cost-effective means of exploring and deciding issues related to the best educational alternatives for a child are available, but have been shunned.

School districts are comprised of people who, like parents, are genuinely motivated to equip each student with the best education possible. School districts do not have unlimited financial resources and what resources they do have should be involuntarily applied to a parent's attorney's fee claims under the IDEA only in those cases in which the parent legitimately retains legal services to assist in resolving substantial disputes, and prevails. Attorney's fees should not generally be awarded in cases like this, where the school district was not given a fair opportunity to hear, consider, and decide what action to take with respect to a parent's educational request.

That is not to say an attorney's fee award would never be appropriate where a parent initially invokes formal administrative or judicial processes. Some circumstances — demonstrated futility of informal discussion, or a school district's history of intransigence — may well justify a fee award even where parents go directly to formal dispute resolution

15

processes.  But this is not such a case.  An award of attorney's fees here would not be appropriate because had the parent given the District a fair opportunity to consider her demands, it would have made the same decision it eventually made, and it would have done so without the need for either party to incur attorney's fees.

Parenthetically, even if plaintiff could qualify as a "prevailing party" in this case, as that term is properly understood in the law, I would still exercise discretion not to award an attorney's fee on this record, because I find that those fees were not reasonably incurred since, again, the District would have agreed to the requested changes in IEP and placement had the parent simply asked for and attended a Team meeting, made her requests known, and given the District a fair opportunity to consider and respond to them.

## CONCLUSION

The District acted properly and in the interest of Chad L. Plaintiff's initiation of due process proceedings did not precipitate changes that would not have taken place otherwise. For the reasons stated above, the court finds that plaintiff is

16

not a "prevailing party" pursuant to § 1415(e)(4)(B) of the IDEA,[1] and, even if plaintiff could qualify as a "prevailing party" on this record, the court still would exercise its discretion not to award fees in this case because those fees were easily avoidable and no genuine dispute existed between the parties warranting the fees incurred.  Accordingly, defendant's motion for summary judgement is granted while plaintiff's motion for summary judgment is denied.

---

[1]  Plaintiff also argues that under the "catalyst theory" articulated in Paris v. United States Dep't of Hous. & Urban Dev., 988 F.2d 236 (1st Cir. 1993), she is entitled to attorney's fees, even if there was not a settlement.  Under the catalyst theory a party must demonstrate "a causal connection between the litigation and the relief sought and that the success was not obtained by the gratuitous gesture of the fee-target." Id. at 241.  To the extent that the "catalyst theory" is applicable, the court finds that plaintiff is not entitled to attorney's fees under that theory.  Plaintiff has not demonstrated that her quick initiation of the due process proceedings acted as a catalyst in bringing about the District's decision to change Chad's placement and offer him a new IEP.  Finally, plaintiff failed to demonstrate that the relief obtained from the District was motivated by anything other than that the District agreed it was appropriate after it was given a fair opportunity to hear and consider her requests.

SO ORDERED.

_____
Steven J. McAuliffe
United States District Judge

July 20, 1995

cc:  Joanne T. Petito, Esq.
     Dean B. Eggert, Esq.