**Deborah SHANAHAN and Paul Shanahan, on behalf of themselves and their daughter Arielle Shanahan, Plaintiffs,**

v.

**The BOARD OF EDUCATION OF THE JAMESVILLE–DEWITT SCHOOL DISTRICT, Defendant.**

No. 95–CV–191(FJS)(GJD).

United States District Court, N.D. New York.

Jan. 21, 1997.

O'Hara & O'Connell, P.C., Syracuse, NY, for Plaintiffs; Danny Louis Mevic, of counsel.

Bond, Schoeneck & King, L.L.P., Syracuse, NY, for Defendant; Patrick J. Rao, of counsel.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, District Judge.

### Introduction

This is an action for attorney's fees under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(e)(4)(B). Presently before the Court are cross-motions for summary judgment pursuant to Fed. R.Civ.P. 56. The Defendant argues that this action is barred by the applicable statute of limitations, and in the alternative, that the Plaintiffs are not "prevailing parties" within the meaning of § 1415(e)(4)(B). Plaintiffs argue that their claim is not time-barred, and that they are "prevailing parties" under the IDEA as a matter of law.

### Factual Background

The facts of this case are largely undisputed. Arielle Shanahan is a student enrolled in the Jamesville–Dewitt Central School District ("District"). In 1985, Arielle was identified as learning disabled and emotionally disturbed, and began receiving special education services from the District. The most important of these services is the development and implementation of Individualized Education Plans ("IEPs") pursuant to the IDEA and applicable state and federal regulations.

On September 24, 1992, the District's Committee on Special Education ("CSE") met to assess Arielle's academic progress and develop Arielle's IEP for the 1992–1993 academic year. At that meeting Arielle's parents recommended that she be placed in a residential educational facility. The CSE disagreed, and instead recommended that Arielle receive (1) resource room assistance six times per week, (2) outside counseling twice per week, (3) in-school counseling once per week, (4) family therapy once per week, and (5) consultation with a psychologist once per week. The Defendant Board of Education subsequently adopted the CSE's recommended 1992–93 IEP.

The District began scheduling CSE meetings to develop IEPs for the 1993–1994 academic year ("annual reviews") in or about December of 1992. In response to an inquiry by Mrs. Shanahan, the District's Director of Pupil Personnel Services, Cheryl A. Saidel, sent Mrs. Shanahan a letter dated January 5, 1992, in which she informed Mrs. Shanahan that the District continued to believe that Arielle did not qualify for a residential placement. In a letter dated February 22, 1993, Mrs. Shanahan responded that she thought that she and her husband had accepted the CSE's 1992–1993 IEP provisionally, and with the understanding that the CSE was going to identify potential residential placements for

Arielle.[1] Mrs. Shanahan also sent a letter dated February 22, 1993, to the president of the Board of Education requesting an impartial hearing to challenge Arielle's 1992–93 IEP.[2]

On February 26, 1993, Mrs. Shanahan contacted Mr. Daniel L. Mevic to represent her and her husband at the hearing.[3] On April 9, 1993, Mr. Mevic sent a letter to Mr. Donald E. Budman, the Defendant's counsel, informing him that he had been retained by the Shanahans to represent them at the impartial hearing and needed Arielle's student records. On May 7, 1993, Mr. Budman delivered the requested records to Mr. Mevic and also suggested that the CSE go ahead and conduct an annual review of Arielle's IEP. Mr. Budman also noted that if the District and the Shanahans reached an agreement at the annual review, they could dispense with the impartial hearing, and if they did not reach an agreement, they could present the impartial hearing officer with a more timely dispute. The Plaintiffs agreed.

In a letter dated June 21, 1993, Mr. Mevic sent Mr. Budman a lengthy letter summarizing the reports of various mental health professionals who had evaluated Arielle. The professionals were virtually unanimous in their support for a residential educational placement for Arielle. (See Complaint, Exs. I–M). Arielle's 1993–94 annual review was held on July 22, 1993. At the meeting, the Shanahans and Mr. Mevic recommended placing Arielle at the Devereux Foundation Mapleton Center, a residential educational facility in Philadelphia, Pennsylvania. The CSE initially rejected Plaintiffs' recommendation, and drafted an IEP recommending resource room five times per week, in-school counseling once per week, and outside counseling one hour per week.[4] However, the CSE also recommend that the District send

someone to the Mapleton Center to review its services. The Shanahans, Arielle, and the High School Vice–Principal, Mr. Brinkerhoff, visited the Mapleton Center on August 2 and 3, 1993. Another CSE meeting was held on held on August 26, 1993. At this meeting, the CSE revisited Arielle's proposed 1993–94 IEP and decided to issue a new IEP recommending that Arielle be placed at the Mapleton Center.

Mrs. Shanahan requested reimbursement for Plaintiffs' costs and attorney's fees in a letter to the new director of Pupil Personnel Services, Mr. Steve Saya. Mr. Saya denied their request in a letter dated July 15, 1994. Plaintiffs commenced this action on February 10, 1995.

## Discussion

### I. Statute of Limitations

■ As stated, the Defendant first argues that this action is barred by the applicable statute of limitations. The IDEA itself does not contain a limitations period. Moreover, the four year federal statute of limitations in 28 U.S.C. § 1658 does not apply to Plaintiffs' claims because the IDEA was enacted prior to December 1, 1990. Thus, the Court must look to "the state law of limitations governing an analogous cause of action." *Board of Regents v. Tomanio,* 446 U.S. 478, 484 (1980).

The Defendants argue that the four month statute of limitations governing Article 78 proceedings in N.Y.C.P.L.R. 217 applies and bars Plaintiffs' claim because this action was filed almost seven months after the Board denied Plaintiffs' request for attorney's fees. The Defendant relies heavily on *Adler v. Education Department of the State of New York,* 760 F.2d 454 (2d Cir.1985). There the court held that the four month statute of limitations in N.Y.C.P.L.R. 217 gave the ag-

---

1. The District alleges that the Shanahans initially agreed to the IEP, but the Shanahans contend that they agreed to accept the IEP provisionally pending the CSE's location of an appropriate residential placement for Arielle. The Court does not find this to be a material dispute.

2. Arielle's annual review was scheduled for March 4, 1993, however, Mrs. Shanahan apparently called Ms. Saidel's office on February 25, 1993 and canceled it.

3. In a letter March 22, 1993, Mr. Matthew Fletcher informed the Shanahans that he had been appointed as the impartial hearing officer for Arielle's impartial hearing.

4. This was actually a reduction in the services provided in Arielle's 1992–1993 IEP.

grieved party ample time to prepare and file their action seeking judicial review a final decision of the New York State Commissioner of Education resolving a dispute over tuition reimbursement. *Id.* at 457–458. The court found that the four month statute of limitations in N.Y.C.P.L.R. 217 was appropriate in light of the two levels of administrative hearings that had already taken place, and the policies and legislative history underlying the IDEA such as its "stay-put" provision, which requires school districts to maintain a child's most recent educational placement during the pendency of any administrative or judicial proceedings. *Id.* at 458–459.[5] In response, Plaintiffs argue that the Court should apply the three year statute of limitations in N.Y.C.P.L.R. 214(2), which applies to actions seeking "to recover upon a liability ... created or imposed by statute."

After carefully reviewing the *Adler* decision and additional case law on this issue, the Court finds that the Defendant's reliance on *Adler* is misplaced. A number of district court decisions from this circuit, all of which were decided after *Adler,* apply the three year statute of limitations in N.Y.C.P.L.R. 214(2) to actions seeking attorney's fees under the IDEA. For example, in *Michael M. v. Board of Education of New York City Sch. Dist.,* 686 F.Supp. 995, 1001–1002 (E.D.N.Y. 1988), the court rejected the *Adler* reasoning, stating that "there is no similarity between an action for attorney's fees and an action to appeal a final administrative determination" because "speed is not of the essence ... [and] concerns about the impact of education planning, as set forth in *Adler* ... are not warranted." In *Robert D. v. Sobel,* 688

F.Supp. 861, 864 (S.D.N.Y.1988), the court applied the three year statute of limitations in N.Y.C.P.L.R. 214(2) for substantially the same reasons. Furthermore, in *Mason v. Schenectady City Sch. Dist.,* 879 F.Supp. 215, 220 (N.D.N.Y.1993), Judge Cholakis, writing for this Court, applied the three year statute of limitations in N.Y.C.P.L.R. 214(2) to an action seeking to force a school district to observe the IDEA's procedural protections.

In this case, it is undisputed that the Plaintiffs brought this action on February 10, 1995, approximately seven months after the Board denied Plaintiffs' request for attorney's fees. In addition, unlike in *Adler,* there is no administrative record before the Court, speed is not of the essence, and Arielle's educational planning and services are not jeopardized in any way because she is currently placed at the Mapleton Center, the Plaintiffs' placement of choice. Therefore, the Court finds that this action is governed by the three year statute of limitations in N.Y.C.P.L.R. 214(2), and was timely filed.[6]

## II. Prevailing Party

■ As stated, the Defendant also argues that Plaintiffs are not "prevailing parties" under the IDEA. The IDEA provides: "[i]n any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorney's fees as part of the costs to the parents or guardian of a child or youth with a disability who is the prevailing party." 20 U.S.C. § 1415(e)(4)(B) (Supp.1995). A prevailing party is one who has succeeded on any significant claim affording at least some of the relief sought.

5. The Defendant also points to the Second Circuit's statement in *Adler* where the court acknowledged that, even though the action involved "a dollars-and-sense reimbursement to the parents, our ruling of course would affect all section 1415(e)(2) actions." *Id.* at 460. However, this statement in unavailing because an action for attorney's fees is not an action under § 1415(e)(2). Rather, it is an action under § 1415(e)(4)(B).

6. The Defendant further cites Seventh Circuit's decision in *Dell v. Board of Education, Township High School District 113,* 32 F.3d 1053 (7th Cir. 1994). In that case the court applied a 120 day statute of limitation found in Illinois law to an action for attorney's fees under the IDEA. *Id.* at

1058. The court recognized that "the promptness of the decision may not be as important [in a case for attorney's fees] as in other IDEA situations." *Id.* Nevertheless, the court concluded that "the parents and attorney's have an interest in the expeditious handling of the matter of fees, and that a return to the administrative record after months after adjudication of the merits" would result in "needless expenditure of judicial energy." *Id.* The Court does not find *Dell* persuasive. In this case, there is no administrative record to review, and there has been no needless expenditure of judicial energy. Moreover, the Court finds the reasoning in *Michael M.* and *Robert D.* more persuasive.

*Texas State Teachers Assoc. v. Garland Independent Sch. Dist.,* 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989).

■ Legal services rendered in connection with CSE meetings and annual reviews are not "actions or proceedings" within the meaning of § 1415(e)(4)(B), *see Brown v. Griggsville Community Unit Sch. Dist. No. 4,* 12 F.3d 681, 684 (7th Cir.1993) (affirming district court decision denying an application for attorney's fees on finding that the plaintiffs' relief was obtained through an annual review, not from a settlement of the impartial hearing); *Fenneman v. Town of Gorham,* 802 F.Supp. 542, 544 (D.Maine 1992) (denying application for costs and attorney's fees arising from expert and attorney participation in the Maine equivalent of New York's CSE meeting). However, it is well settled that § 1415(e)(4)(B) encompasses legal services rendered in connection with impartial hearings. *Brown,* 12 F.3d at 684 (and cases cited therein).[7]

■ It is also well settled that prevailing plaintiffs may obtain costs and attorney's fees for pre-hearing settlements pursuant to § 1415(e)(4). *Anderson v. Board of Education of the Syracuse City School District,* 88–cv–122, Slip Op., 1989 WL 8664 (N.D.N.Y. 1989) (McCurn, J.) (awarding costs and attorney's fees where plaintiff entered into a pre-hearing settlement of IDEA claim); *Shelly C. v. Venus Independent Sch. Dist., et al.,* 878 F.2d 862, 864 (5th Cir.1989) (fees awarded where request for impartial hearing was made, and then parties settled); *Angela L. v. Pasadena Independent Sch. Dist.,* 918 F.2d 1188, 1195 (5th Cir.1990) (case settled in pre-hearing conference with impartial hearing officer); *Barlow–Gresham Union High Sch.*

*District 2 v. Mitchell,* 940 F.2d 1280, 1285 (9th Cir.1991) (school district originally filed action in district court, impartial hearing convened, and then parties settled). The "trigger point" for attorney's fees under the IDEA is generally a request for an impartial hearing. *Anderson,* 88–cv–122, Slip Op. (N.D.N.Y.1989) (citing *Cox v. Berlin–Milan Local Sch. Dist.,* CV–87–7200, Slip Op. (N.D.Ohio 1987) (awarding fees where there was a request for an impartial hearing and a written agreement settling the matter)).

To justify an award of attorney's fees, the prevailing party must show a causal connection between the relief obtained and the litigation or proceeding for which fees are sought. *Gerena–Valentin v. Koch,* 739 F.2d 755, 758 (2d Cir.1986) (involving claim under the Voting Rights Act) (citations omitted). A causal connection exists where the action or proceeding was a "catalytic, necessary, or substantial factor in attaining the relief." *Id.* at 758–59; *see also Brown v. Griggsville Community Unit Sch. Dist. No. 4,* 12 F.3d 681, 684 (7th Cir.1993) (affirming district court decision denying attorney's fees where court found that the plaintiffs' relief was obtained through an annual review, not from a settlement of the impartial hearing).

In this case, it is undisputed that the Shanahans sought a residential education placement for Arielle, that they filed a request for an impartial hearing in February of 1993, and that the Board changed its position in August of 1993 and issued an IEP placing Arielle at the Mapleton Center, the Plaintiffs' placement of choice. Although no impartial hearing was ever held, based upon these undisputed facts, the Court finds that Plaintiffs are "prevailing parties" under the

---

7. In its decision, the *Fenneman* court quoted statements in the IDEA's legislative history stating that the term "proceeding" was not intended to cover meetings to develop IEPs. *Id.* The court further stated that CSE meetings were specifically designed to be "informal meetings where parents, teachers and administrators sit down to work out an IEP by consensus if possible ... [rather than] treating them as part of the [adversarial] administrative/litigation process." *Id.* at 545. One of the stated purposes of the IDEA is to assure that all children with disabilities have available to them "a free appropriate public education which emphasizes special education and related services designed to meet their unique needs, to assure the rights of children with disabilities and their parents or guardians are protected." 20 U.S.C. § 1400(c). While awarding attorney's fees for work done in preparation for an impartial hearing promotes this purpose, awarding attorney's fees for legal services rendered in connection with CSE meetings could encourage attorney participation in those meetings. This, in turn, could lead to an antagonistic and unduly adversarial environment at CSE meetings, a result never intended by the IDEA.

IDEA, and have established a prima facie claim for attorney's fees under 1415(3)(4)(B).

The Defendant argues that Plaintiffs' request for an impartial hearing was not a necessary, substantial, or catalytic factor leading to Arielle's residential placement. Specifically, the Defendant argues that Arielle's annual review was previously scheduled by the District and would have occurred even if the Plaintiffs' had not requested an impartial hearing. In addition, the Defendant argues that the District changed its position with respect to the Shanahan's request for a residential placement because of educational concerns unrelated to Plaintiffs' request for an impartial hearing.[8]

In this case it is undisputed that Plaintiffs requested an impartial hearing in February 1993, and that the Board explicitly rejected Plaintiffs' request for a residential placement both before and immediately after Plaintiffs made their request for an impartial hearing. It is also undisputed that Plaintiffs' counsel engaged in a number of discussions with Defendant's counsel and served him with a lengthy document outlining and supporting Plaintiffs' position. Moreover, the record also indicates that the CSE meetings held in the summer of 1993 were attended by individuals not normally present at CSE meetings, namely, Mr. Budman and the Superintendent. Finally, it is also undisputed that the CSE thoroughly investigated the Shanahans' request for a residential placement after they filed their request for an impartial hearing.

Although the District was planning to conduct Arielle's annual review prior to Plaintiffs' request for an impartial hearing, there is little doubt that the Plaintiffs' request played a substantial role in shaping the discussions and the subsequent actions taken by the District. Therefore, after carefully reviewing the entire record, the Court finds that Plaintiffs' request for an impartial hearing was both a catalytic and substantial factor leading to Arielle's placement at the Mapleton Center, and to the extent Plaintiffs' fee request represents legal services rendered in preparation for that impartial hearing, the Court finds that the Plaintiffs are entitled to those fees under the IDEA.

Finally, the Defendant argues that evidence submitted indicates that the legal services rendered by Plaintiffs' counsel were rendered in connection with the District's CSE meetings in the Summer of 1993, and not in connection with any impartial hearing. It is, at best, extremely difficult to determine whether the legal services rendered by Plaintiff's counsel were rendered in preparation for the requested impartial hearing, the CSE meetings, or both. Therefore, after carefully reviewing the billing records submitted, the Court finds that Plaintiffs are entitled to eight thousand one hundred thirty-one dollars and fifty cents ($8,131.50) in attorney's fees for legal services rendered prior to the pre-hearing settlement reached during the August 26, 1993 CSE meeting.[9] The Court declines to award Plaintiffs attorney's fees

---

**8.** In support of this argument, the Defendant submits affidavits from two members of the CSE. In the first affidavit, Dr. James Tucker, a medical doctor, states that he voted in favor of the residential placement after listening to presentations about the Mapleton Center and considering its mental health and academic programs. Dr. Tucker also states that Mrs. Shanahan's request for an impartial hearing in no way influenced his decision and that it was never even mentioned. In the second affidavit, Dr. Mastropaolo, a psychologist, states that he was persuaded to vote in favor of the residential placement at the Mapleton Center because it could provide Arielle with adequate emotional and educational support in the least restrictive environment. Dr. Mastropaolo also states that Mrs. Shanahan's request for an impartial hearing in no way influenced his decision. While these affidavits are relevant to the Court's analysis, they by no means lead inexorably to the conclusion that Plaintiffs' request for an impartial hearing was not a catalyst or substantial factor in bringing about Arielle's residential placement. Therefore, the Court will consider this evidence along with the other evidence submitted in this action.

**9.** There are no references to CSE meetings and many references to the impartial hearing in Attorney's Mevic's billing records for services he rendered prior to May 7, 1993, the date of Mr. Budman's letter to Mr. Mevic. On the other hand, there are numerous references to upcoming CSE meetings and no references to the impartial hearing in Mr. Mevic's billing records for services he rendered after May 7, 1993. Therefore, the Court finds that Plaintiffs are entitled to $4,734.00 (52.6 hours @ $90.00 per hour), for legal services rendered between February 22, 1993 and May 7, 1993; and $3,397.50 ((75.5 hours @ $90.00 per hour) × ½) for legal services rendered between May 7, 1993 and August 26,

for the prosecution of this action. *See Anderson,* 88–cv–122, Slip Op. (N.D.N.Y. 1989).

### Conclusion

Therefore, after carefully considering the papers submitted, the arguments of counsel, the applicable law, and the entire file in this matter, it is hereby

ORDERED, that the Defendant's motion for summary judgment is DENIED, Plaintiff's cross-motion for summary judgment is GRANTED, and the Clerk of the Court is directed to enter judgment in favor of the Plaintiffs in the amount of eight thousand one hundred thirty-one dollars and fifty cents ($8,131.50) in attorney's fees for legal services rendered prior to the pre-hearing settlement reached during the August 26, 1993 CSE meeting.

**IT IS SO ORDERED.**

---

1993. The latter figure was calculated by attributing one-half of Attorney Mevic's services to preparation for the impartial hearing, and one half to preparation for the CSE meetings. The award does not include the fee charged by Dr. Blumetti for his expert report dated June 11,

1993. Plaintiffs have submitted no authority for awarding a prevailing party expert fees under 20 U.S.C. § 1415(e)(4)(B), and such fees are not normally taxable as costs under 28 U.S.C. § 1920.